IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT BIAGAS, | No. C 10-2429 SBA (PR) |
| Petitioner, | **ORDER DENYING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY AND SETTING BRIEFING SCHEDULE** |
| v. | |
| JAMES WALKER, Acting Warden, | |
| Respondent. | (Docket no. 4) |

Petitioner Vincent Biagas, a state prisoner, filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In an Order dated August 30, 2010, the Court directed Respondent to address the timeliness of the petition by filing a motion to dismiss or a notice that such motion is unwarranted.

The parties are presently before the Court on Respondent's motion to dismiss the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Petitioner has filed an opposition,[1] and Respondent has filed a reply.

Having considered all of the papers filed by the parties, the Court DENIES Respondent's motion to dismiss.

**BACKGROUND**

On August 15, 1996, an Alameda County jury convicted Petitioner of several felonies, including convictions for assault with a deadly weapon and evading a peace officer with wanton

---

[1] Petitioner's opposition consists of a completed seven-page habeas corpus petition form, over fifty pages of a handwritten attachment entitled, "Petitioner['s] Opposition; Points and Authorities in Support[] of Petition and Order to Show Cause," and fifteen pages worth of medical records. The Court has renumbered the opposition to begin with the first page of the habeas corpus petition form as page one and so on. The Court notes that the opposition is very disorganized, and it includes irrelevant information about the merits of his petition. At times, Petitioner's arguments relating to timeliness are difficult to follow because certain pages are filled with incomplete sentences and phrases. Petitioner's opposition is signed under penalty of perjury. Finally, the Court notes that, in the reply, Respondent has reorganized the medical records into chronological order and numbered them as well. (Reply, Ex. A at 1-15.)

disregard. The trial court found that he had sustained nine prior felony convictions, including two strikes. On November 1, 1996, he was sentenced to twenty-five years to life in state prison.

Thereafter, Petitioner directly appealed his conviction to the California Court of Appeal. On December 30, 1997, the state appellate court affirmed the judgment of the trial court.

Petitioner then filed a petition for review in the California Supreme Court, which was denied on April 15, 1998. Petitioner did not pursue collateral relief in state court before filing his habeas corpus petition in federal court.

Petitioner filed the instant federal petition on May 25, 2010.[2]

On March 8, 2011, Respondent filed a Motion to Dismiss Petition as Untimely (docket no. 4). On May 6, 2011, Petitioner filed an opposition to the motion. On May 13, 2011, Respondent filed a reply to the opposition.

## **DISCUSSION**

The AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1).

---

[2] A pro se federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). The federal habeas petition was signed on May 25, 2010, which is the earliest date that the petition could have been delivered to prison authorities for mailing. For the purposes of this discussion, the Court deems that the petition was filed on that date. The Court notes that Respondent did not take the mailbox rule into account by indicating the petition was filed on "June 1, 2010," and, later, also incorrectly indicating the petition was filed in "August 2010." (Mot. to Dismiss at 2.)

2

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. See Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1286 (9th Cir. 1997), overruled in part on other grounds, Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc). The one-year period may start running from the expiration of the time for seeking direct review. See 28 U.S.C. § 2244(d)(1)(A).

As a threshold matter, once a petitioner is notified that his petition is subject to dismissal based on the AEDPA's statute of limitations and the record indicates that the petition falls outside the one-year time period, the petitioner bears the burden of demonstrating that the limitations period was sufficiently tolled under statutory and/or equitable principles. See Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Here, Petitioner did not seek a writ of certiorari from the United States Supreme Court after the state supreme court denied review on April 15, 1998. Thus, his process of direct review came to an end ninety days later, on July 14, 1998, when the time allotted for filing a petition for a writ of certiorari expired. See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). As such, Petitioner was required to file his federal habeas petition no later than July 14, 1999. See 28 U.S.C. § 2244(d); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (calculating AEDPA's one-year limitations period according to Federal Rule of Civil Procedure 6(a)). Because he did not file the present petition until May 25, 2010 -- more than ten years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to equitable tolling.[3]

**I.    Equitable Tolling**

The one-year limitations period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. Beeler, 128 F.3d at 1288. "When external forces, rather than

---

[3] There is no statutory tolling under 28 U.S.C. § 2244(d)(2) in this case because Petitioner did not file any state post-conviction or collateral petitions.

a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling, however, is unavailable on most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted). The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).

The petitioner bears the burden of showing he is entitled to equitable tolling, and the determination of whether such tolling applies is a fact-specific inquiry. Id. Thus, petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him, Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002), and that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time," Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). Where a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005). He must, furthermore, show that his untimeliness was caused by an external impediment and not by his own lack of diligence. Bryant v. Ariz. Att'y Gen., 499 F.3d 1056, 1061 (9th Cir. 2007).

In the present case, Petitioner has listed two reasons that he alleges contributed to his delay in filing his federal petition: (1) his lack of access to his legal files; and (2) his mental impairment.

### A.     Lack of Access to Legal Files

Petitioner argues that he did not receive his legal files, including "a copy of transcript or court records," from his trial and appellate counsels. (Opp'n at 10-11.) He states:

> [He] did not have a copy of transcript or court records and [the] claims presented could have been discovered through the exercise of due diligence had trial counsel or appellate counsel forward[ed] [a] copy of trial transcript and that [was] the only way [his] claims could have been discovered on time.

(Id. at 10.) A habeas petitioner cannot be expected to "'prepare and file a meaningful petition on his

4

own within the limitations period' without access to his legal file." Espinoza-Matthews v. California, 432 F.3d 1021, 1027-28 (9th Cir. 2005) (quoting Spitsyn, 345 F.3d at 801). Therefore, Petitioner's lack of access to his legal files could constitute an extraordinary circumstance sufficient to warrant equitable tolling. See id. (equitable tolling warranted during inmate's eleven-month stay in administrative segregation because he was denied access to legal papers despite his repeated requests for them); see also Lott v. Mueller, 304 F.3d 918, 921-24 (9th Cir. 2002) (granting habeas petitioner equitable tolling for eighty-two days he was deprived of his legal materials due to two temporary transfers, despite the fact that petitioner received materials shortly before the limitations period was to expire).

In his reply, Respondent stresses that Petitioner's equitable tolling claim is conclusory, stating:

> Petitioner's claim regarding his allegedly delayed receipt of the trial transcript is completely conclusory. He provides no information about when he received the transcript, what particular document he needed in order to prepare the federal petition, and why he could not procure that document in time to file a timely petition. Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013-1014 (9th Cir. 2009); see United States v. Battles, 362 F.3d 1195, 1196-1199 (9th Cir. 2004) (expressing doubt that counsel's delay in turning over a full set of transcripts actually prevented petitioner from meeting the statute of limitations). Moreover, "petitioners are not required by 28 U.S.C. § 2254 or the Rules Governing § 2254 Cases to attach to their petitions, or to file separately, state-court records," unless they challenge the sufficiency of the evidence. Pliler v. Ford, 542 U.S. 225, 232 (2004). Petitioner has not met his burden to show either that an extraordinary circumstance existed or that [] he was diligent in seeking the transcripts.

(Reply at 2.)

The Court notes that Petitioner does not specify why "a copy of transcript or court records" was necessary to file a timely federal petition. Neither does Petitioner show that he was diligent in trying to obtain his legal files nor does he explain whether he could have obtained this information from his general knowledge obtained during his trial at the Alameda County Superior Court. Thus, the Court could find that Petitioner is unable to meet his burden of proof to establish whether his lack of access to his legal files was an extraordinary circumstance that made it impossible for him to file a federal petition on time. Cf. Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) (rejecting

5

equitable tolling based on delay in receiving trial transcripts because possession of trial transcript is not a condition precedent to filing for post-conviction relief; a petition seeking collateral relief could have been filed, following which, if necessary for decision of the issues raised, the court could have ordered production of the transcript). However, the Court need not decide this issue because, as explained below, it finds that the record has not been fully developed as to Petitioner's claim that he is entitled to equitable tolling based on mental impairment.

### B. Mental Impairment

Construing Petitioner's allegations liberally in his verified opposition, he argues that he is also entitled to equitable tolling due to his mental impairment from the time the statute of limitations began to run on July 14, 1998 until the time he filed his federal habeas petition on May 25, 2010. (Opp'n at 25-38.) Specifically, Petitioner claims that he was taking "psychotropic" medications that deprived him of "any kind of consciousness in those years," which prevented him from timely filing his petition. (Id. at 25, 29.)

Severe mental illness is an extraordinary circumstance beyond a prisoner's control which justifies equitable tolling. See Kelly, 163 F.3d at 541 (holding that a petitioner's alleged mental impairment justifies equitable tolling at least until a competency hearing). However, a showing of mental illness alone will not necessarily toll the limitations period because most mental illnesses are treatable, and with proper treatment many sufferers are capable of managing their own affairs. See Miller v. Runyon, 77 F.3d 189, 192 (7th Cir.), cert. denied, 519 U.S. 937 (1996).

Under Ninth Circuit law, a petitioner must satisfy a two-part test to be eligible for equitable tolling for mental impairment. Bills v. Clark, 628 F.3d 1092, 1099 (9th Cir. 2010). First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either (a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the

6

circumstances, including reasonably available access to assistance. Id. (citations and emphasis omitted). If "petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period," an evidentiary hearing is appropriate to determine whether equitable tolling applies. Id. at 1100. However, an evidentiary hearing is not necessary "[w]here the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, . . . notwithstanding a petitioner's allegations of mental incompetence." Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (citation omitted).

In the reply, Respondent claims that Petitioner's medical records attached his opposition "do not show that he had a 'severe mental impairment during the filing period,' or that the alleged impairment made it impossible to file a timely petition." (Reply at 5.) Respondent argues equitable tolling is unwarranted, stating:

> [Petitioner's] previously diagnosed mental disorder was closely monitored and well controlled with prescription medication during the limitations period. Even in 1997, before the statute began running, petitioner reported hearing voices but they were nonconsequential, he acknowledged that he was not compelled to act on them, he experienced no mental health crisis, and the progress notes consistently stated that his thought processes were organized. Thus, because petitioner's mental functioning clearly was not so impaired as to prevent him from filing a timely petition, no further factual development of the claim is appropriate. Roberts v. Marshall, 627 F.3d at 773. Nor has petitioner made any attempt to show that he had a debilitating mental deficit for the entire 11-year period at issue.

(Reply at 6.)

The exhibits attached to Petitioner's opposition include medical records showing his periodic history of mental illness beginning from March 24, 1994 through December 21, 1998.[4] (Reply, Ex. A at 1-14.) Neither Petitioner nor Respondent offers complete medical records of Petitioner's mental status during the relevant time period, from July 14, 1998 until May 25, 2010. Petitioner only provides fifteen pages of medical records; however, as the Court finds below, these records are

---

[4] The last medical record, dated December 20, 1999 and January 19, 2000, is difficult to decipher. (Reply, Ex. A at 15.) This document includes various medication prescribed to Petitioner on those dates. The Court cannot decipher the names of the medication, and the record does not indicate the reasons these medicines were prescribed. Therefore, this document will not be considered in the Court's evaluation of Petitioner's claim of equitable tolling. Petitioner did not submit any other medical records dated after January 19, 2000.

7

insufficient to determine the status of his mental impairment during the entire relevant time period. (Reply, Ex. A 1-15.)

On March 24, 1994, while Petitioner was housed the Santa Rita Jail awaiting trial, he was prescribed Lithium, Elavil, and Benadryl for an unspecified "psych. disorder." (Id. at 1.) Shortly after sentencing, during his evaluation interview at the reception center of San Quentin State Prison (SQSP) on November 18, 1996, Petitioner was diagnosed with "schizoaffective disorder, bipolar type" as well as "polysubstance dependence, in remission." (Id. at 2-5.) He was treated with medication, including Elavil, Navane, Licos, and Benadryl. (Id. at 4.) The SQSP clinical psychiatrist noted that Petitioner was not suicidal and that he met the criteria for inclusion in the mental health treatment population because he needed medication and ongoing evaluation of his mental status. (Id.) On March 12, 1997, Petitioner was transferred to prison from the reception center, and his medications were continued. (Id. at 6.)

During the time period from December 31, 1996 through January 22, 1998, Petitioner continued taking his medications; however, he still complained about the following: "hear[ing] voices" on December 31, 1996; "low grade noconsequential audit[ory] halluc[inations]" on April 10, 1997[5]; auditory and visual hallucinations on July 12, 1997; increased paranoia and "hear[ing] voices stating 'Get them' or telling him to 'Jump on people'" on June 6, 1997; auditory hallucinations in July 30, 1997; depression and auditory hallucinations "telling him to be 'violent to other people'" in August 27, 1997; "minimal" hallucinations on November 12, 1997; auditory hallucinations "telling him other people are wrong" on December 6, 1997; and trouble sleeping on January 22, 1998[6]. (Id. at 5-9.) During the time period from March 16, 1998 through December 21, 1998, the records show that his medications were continued and also that: his "mood [was] stable" on March 16, 1998; he

---

[5] Respondent states that Petitioner was examined on April 1, 1997; however, while the notes are handwritten, they are easily decipherable and instead show that he was examined on April 10, 1997.

[6] Again, the Court has deciphered the date of this examination to be on January 22, 1998, instead of on the date Respondent noted it to be -- January 27, 1998.

was compliant with his medication on April 20, 1998; he "denie[d] a/v hallucinations" on May 14, 1998; he was "not wishing to change meds" so "all meds [were] renewed" on May 27, 1998; his complaint of hearing voices decreased but "still remain[ed]" on July 29, 1998; he had no "psych complaints" on August 19, 1998 and October 5, 1998; that he "denies a/v hallucinations" on October 28, 1998 and December 17, 1998; and that he was "doing well," had a "normal mood," and was not "actively psychotic" on December 21, 1998. (Id. at 9-14.)

Again, liberally construing the allegations in his opposition and the aforementioned exhibits, Petitioner claims he is entitled to equitable tolling because he suffered from mental impairment during the time period in which he should have filed his federal habeas petition, from July 14, 1998 through May 25, 2010. Based on the documentation listed above, the Court is not persuaded at this juncture that the record fails to establish that Petitioner suffers from a "severe mental impairment." Petitioner was diagnosed with a "schizoaffective disorder, bipolar type" on December 31, 1996; therefore, the record shows that he suffered from severe mental illness that could have prevented him from filing a timely petition. However, as mentioned above, the documentation Petitioner has submitted only include medical reports beginning from March 24, 1994 through December 21, 1998.

In assessing an equitable tolling claim based on mental impairment, the Court must take care not to deny a motion for equitable tolling before a sufficient record can be developed. In Laws v. Lamarque, the Ninth Circuit reversed the district court's order granting a motion to dismiss because it failed to develop the record in response to Laws's claim of mental incompetency. 351 F.3d 919, 924 (9th Cir. 2003). At the time the district court dismissed the petition, the record showed that a divided panel of psychiatric experts had concluded that Laws was competent at the time of his trial. However, the record did not contain any medical records from the period for which equitable tolling was requested. Id. at 923. Further, the respondent had not provided any evidence to rebut Laws's assertion that he was "deprived of any kind of cons[ci]ousness." Id. at 924. The Ninth Circuit determined that a district court should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling. Id. Instead, Ninth Circuit cases require only that there be "circumstances consistent with

[the] petitioner's petition . . . under which he would be entitled to . . . equitable tolling" to trigger further factual development of the record. Id. (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding)). The Ninth Circuit ultimately found that the district court erred in granting judgment against Laws because, in light of the inadequate record and unrebutted assertions before it, "[i]t [was] enough that Laws 'alleged mental competency' in a verified pleading." Laws, 351 F.3d at 924 (citations omitted). The court was careful to point out, however, that "a petitioner's statement, even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced." Id. Therefore, the Ninth Circuit held that Laws was entitled to further factual development or an evidentiary hearing on the issue of whether he was precluded from filing his petition by reason of mental impairment. Id. Thus, under Laws, a district court may not grant a motion to dismiss merely because a petitioner fails to provide evidence beyond conclusory statements to support his claim for equitable tolling. Rather, the court may only dismiss a claim in the presence of a sufficiently developed record containing "countervailing evidence" that rebuts a petitioner's claim. Id.

In Laws, the record contained no medical reports from the period during which the petitioner claimed to be incompetent. Id. at 923. Furthermore, the "state [had] offered no evidence at all that he was [competent] in the years when his petitions should have been filed." Id.

The present case differs slightly from Laws in that the record contains medical reports beginning from March 24, 1994 through December 21, 1998. (Reply, Ex. A 1-14.) However, the record is still not sufficiently developed for consideration because it lacks Petitioner's complete medical reports relating to his mental impairment from the start of the limitations period on July 14, 1998 through the filing date of his federal petition on May 25, 2010. Further, Respondent has not offered any "countervailing evidence" in the form of medical reports showing that Petitioner did not suffer from a mental impairment during the relevant time period. Accordingly, based on the record before it, the Court cannot determine whether Petitioner is entitled to equitable tolling due to his

10

alleged mental impairment during the relevant time period. Cf. Roberts, 627 F.3d at 773 (holding district court did not abuse its discretion by denying petitioner evidentiary hearing, and finding that he was not entitled to equitable tolling for mental impairment during period in which he was able to file state habeas petitions raising the same arguments he presented in his federal habeas petition).

Under the circumstances, Respondent's motion to dismiss the petition as untimely (docket no. 4) is DENIED. This denial is without prejudice to renewing said motion, provided that Respondent can demonstrate that Petitioner did not suffer from a mental impairment (that caused the untimely filing of his federal petition) with "countervailing evidence" that rebuts Petitioner's claim for equitable tolling, including relevant authenticated medical reports.[7] If Respondent files a renewed motion to dismiss addressing the aforementioned equitable tolling issue, Petitioner shall be given the opportunity to file an opposition. Petitioner shall also include supporting documents to counter Respondent's argument against equitable tolling based on mental impairment, such as any additional relevant medical records from his prison file. Petitioner is not precluded from renewing his claim of equitable tolling based on his alleged lack of access to his legal files. However, if Petitioner renews this claim, the Court directs Petitioner to: (1) specify why "a copy of transcript or court records" was necessary to file a timely federal petition; (2) show that he was diligent in trying to obtain his legal files; and (3) explain why he could not have made use of information from his general knowledge obtained during his trial at the Alameda County Superior Court. Finally, Respondent shall file a reply to Petitioner's opposition. The parties shall abide by the briefing schedule outlined below.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Respondent's motion to dismiss the petition as untimely (docket no. 4) is DENIED without prejudice to renewing the motion and addressing the equitable tolling issues set forth above

---

[7] Because the Court has denied Respondent's motion to dismiss as untimely upon determining that the record has not been fully developed as to Petitioner's alleged mental impairment, the Court need not address his claim to equitable tolling based on his alleged lack of access to his legal files.

11

no later that **sixty (60) days** of the date of this Order.  If Respondent chooses to file a renewed motion, Petitioner shall file an opposition, no later than **thirty (30) days** of his receipt of the renewed motion, and Respondent shall file with the Court and serve on Petitioner a reply no later than **fifteen (15) days** of receipt of any opposition.

2.      Should Respondent fail to file a renewed motion to dismiss within the sixty-day time frame, Respondent is directed to SHOW CAUSE why the petition should not be granted. Respondent shall file with this Court and serve upon Petitioner, no later than **sixty (60) days** of the date of this Order, an Answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be issued.  Respondent shall file with the Answer a copy of all portions of the state trial record that have been transcribed previously and that are relevant to a determination of the issues presented by the petition.

3.      If Petitioner wishes to respond to the Answer, he shall do so by filing a Traverse with the Court and serving it on Respondent no later than **thirty (30) days** of his receipt of the Answer. Should Petitioner fail to do so, the petition will be deemed submitted and ready for decision **thirty (30) days** after the date Petitioner is served with Respondent's Answer.

4.      It is Petitioner's responsibility to prosecute this case.  Petitioner must keep the court informed of any change of address by filing a separate paper with the Clerk of the Court headed "NOTICE OF CHANGE OF ADDRESS," and comply with any orders of the Court within the time allowed or ask for an extension of that time.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  See Martinez v. Johnson, 104 F.3d 769, 772 (5th Cir. 1997) (Rule 41(b) applicable in habeas cases).

5.      Petitioner is reminded that all communications with the Court, whether by way of formal legal motions or informal letters, must be served on Respondent by mailing a true copy of the document to Respondent's counsel.

6.      Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of

time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

7. This Order terminates Docket no. 4.

IT IS SO ORDERED.

DATED: 3/26/12

                                                 SAUNDRA BROWN ARMSTRONG
                                                 United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VINCENT BIASAS,

        Plaintiff,

v.

JAMES WALKER et al,

        Defendant.
                                    /

Case Number: CV10-02429 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 29, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Vincent James Biagas D-66188
CSP-Sacramento
CA State Prison-Folsom(New)
P O Box 290066
Represa, CA 95671

Dated: March 29, 2012

                                      Richard W. Wieking, Clerk
                                      By: Lisa Clark, Deputy Clerk